**United States District Court**
For the Northern District of California

1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5   YEHUDA AVITAN,                          Case No. C-10-03288 JCS
6
7            Plaintiff,                      **ORDER GRANTING MOTION TO
                                            DISMISS IN PART AND FOR
        v.                                  SUMMARY JUDGMENT IN PART AND
8                                           DENYING  PLAINTIFF'S CROSS
    ERIC HOLDER, ET AL.,                    MOTION FOR SUMMARY JUDGMENT
9                                           [Docket No.  14]**
             Defendants.
10   _____/
11

## I.    INTRODUCTION

Plaintiff Yehuda Avitan brings this action challenging the denial of his I-130 Immigrant
Marriage Petition.  Defendants bring a Motion to Dismiss in Part and for Summary Judgment in Part
("Defendants' Motion") seeking: 1) dismissal of Claims One, Two and Six under Rule 12(b)(6) of
the Federal Rules of Civil Procedure; and 2)  summary judgment on Claims Three, Four and Five
under Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff brings a cross-motion for summary
judgment ("Plaintiff's Motion").   A hearing on the Motions was held on Friday, February 4, 2011 at
9:30 a.m.  For the reasons stated below, Defendants' Motion is GRANTED.  Plaintiff's Motion is
DENIED.[1]

## II.    BACKGROUND

### A.    Facts

On September 5, 2005, Lisa Claire Butler ("petitioner") filed an I-130 Petitions for Alien
Relative ("the First I-130 Petition") on behalf of beneficiary Yehuda Avitan, Plaintiff in the instant
action.  See Certified Administrative Record ("CAR") at 60.  This petition was based on the
marriage on April 23, 2005 between Avitan and Ms. Butler. *Id.* at 52 .  According to Plaintiff,

_____

[1]The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to
28 U.S.C. § 636(c).

**United States District Court**
For the Northern District of California

1   around the same time, on September 9, 2005, he filed an application for adjustment of status to

2   permanent residence (hereinafter, "Form I-485").  Complaint, ¶ 21.  Plaintiff was paroled into the

3   United States on June 19, 2007.  *Id*., ¶ 23.

4          Plaintiff alleges that on June 13, 2006, Avitan and Ms. Butler attended an interview at the

5   office of  U.S. Citizenship and Immigration Services ("USCIS") in Salt Lake City, Utah in

6   connection with the First I-130 Petition.  *Id*., ¶ 22.  According to Plaintiff, "[a]fter the interview, the

7   adjudicating officer, Mark Titus . . .informed [Avitan] and Ms. Butler that everything in the I-130

8   petition looked fine, but [Avitan] and Ms. Butler needed to submit the co-sponsor's most recent tax

9   returns . . .[and] an affidavit from [Avitan's] brother to the bona fides of the marriage."  *Id.*, ¶ 22.

10  Plaintiff alleges that this evidence was promptly provided to Officer Titus.  *Id*.

11         On May 29, 2008,[2] Avitan and Ms. Butler were interviewed a second time in connection with

12  the First I-130 Petition.  *Id*., ¶ 24; *see also* CAR at 57-60.  Ms. Butler and Avitan were interviewed

13  separately, under oath.  CAR at 24; Complaint, ¶ 25.   At the interview, Ms. Butler signed a sworn

14  statement that includes the following exchange between Ms. Butler and Officer Titus:

15  Q.     Are you and your husband living together in the same home?
    A.     No.
16  Q.     Have you ever lived together in the same home.
    A.     No.
17  Q.     When and where were you and your husband married?
    A.     Elvis Chapel in Las Vegas, NV on 4-23-2005.
18  Q.     How long did you know your husband before you were married?
    A.     About a month or 2 months.
19  Q.     Who arranged the marriage?
    A.     We both did.
20  Q.     Were you paid any money prior to the marriage or after the marriage, by your husband or any
           of his family members?
21  A.     During the last 4 years it has been about $4,00.00 and the cable bill every month.
    Q.     Was this money given to you to enter into a Sham Marriage to circumvent immigration law?
22  A.     Yeah.
    Q.     Were you made any other primises or offered any other money?
23  A.     Yeah I was going to be given an additional $1000.00.
    Q.     Did you know it was a violation of law to enter into a sham marriage?
24  A.     Yes.
    Q.     Why did you get married to this person when you knew it was a violation of law?
25  A.     I care about him and thought he could make soemthing for himself, because he does work
           hard,
26  Q.     Are you currently living with your husband in a valid marital union?

27  ─────────────────────

    [2]Although Plaintiff alleges that the interview took place on May 28, 2008, the administrative
28  record indicates that it took place on May 29, 2008.

**United States District Court**
For the Northern District of California

1   A.      No.
    Q.      Have you and your husband ever consummated your marital union?
2   A.      Once before we were married but not since the marriage.
    Q.      Since I have explained all the information to you about a sham marriage[,] [w]hat would you
3           like to do with the I-130 relative petition that you submitted for your claimed husband?
    A.      Withdraw the application.
4
            . . .
5

6   CAR at 58-59.   Ms. Butler also signed a Withdrawal Form, and the First I-130 Petition was denied

7   on the same day.  CAR at 57, 60.  In his Complaint, Plaintiff alleges that Ms. Butler signed the

8   statement and withdrawal form only because Officer Titus threatened her with imprisonment and

9   "she felt that she had no choice but to sign the statement prepared entirely by Officer Titus."

10  Complaint, ¶¶ 27-28.

11          On June 10, 2008, USCIS placed Avitan into removal proceedings for having overstayed his

12  visitor's visa issued on November 13, 2004.  Complaint ¶ 29.

13          On November 28, 2008, Ms. Butler filed a second I-130 petition on Avitan's behalf ("the

14  Second I-130 Petition").  CAR at 50-51; Complaint ¶ 30.

15          On April 28, 2009, USCIS interviewed Avitan and Ms. Butler under oath in conjunction with

16  the Second I-130 Petition.  Complaint ¶ 30; CAR at 2, 24.  On May 5, 2009, USCIS denied the

17  Second I-130 Petition after concluding that the marriage was entered into for the purpose of evading

18  immigration laws and obtaining immigration benefits for Avitan.  CAR at 23-27.  The written

19  decision that accompanied the denial states, in part, as follows:

20      During the interview, you and the beneficiary were both asked if you lived together, both of
        you said no.  You both testified that you maintain separate residences. . . .
21
        . . .
22
        The officer asked you where you were residing when you initially met the beneficiary.  You
23      stated that you were residing at 6101 "something road" in Albuquerque, New Mexico.  You
        were further asked if the beneficiary has spent the night at that residence.  You stated no.
24      You were then asked if he has visited you at the address.  You stated that "he came in but not
        spent the nght."  When the beneficiary was asked the same question, he responded that he
25      has never been at your New Mexico residence.

26      You confirmed that you previously lived at 582 N. Riverside Drive residence at Salt Lake
        City, Utah with your son from November 2006 through September 2008.  You stated that the
27      beneficiary would "just come visit" and he did not spend the night here.  You further stated
        that your relationship at this point was only platonic and you and the beneficiary were
28      friends.  When the beneficiary was asked if he ever spent the night at the residence, he stated

3

**United States District Court**

For the Northern District of California

1    that he at least spent the night "involving an amount under five times." . . .

2    . . .

3    The officer asked if your parents are aware of your marriage with the beneficiary.  You stated
     that they are not aware and you further stated that "I don't want them in my life," but you

4    stated your sister is aware of your marriage to the beneficiary.  When the beneficiary was
     asked the same question, he stated that your parents knew about the marriage.  When the

5    beneficiary was confronted with the discrepancy, he stated, "that's what she . . .told me
     awhile ago."

6
     . . .

7

8    CAR at 24-25.

9        On September 13, 2009, Ms. Butler filed a third I-130 petition on Avitan's behalf ("the Third

10   I-130 Petition"), along with an affidavit stating that she had agreed to withdraw the First I-30

11   Petition only because Officer Titus threatened her during the interview, stating, in part, as follows:

12       My name is Lisa Clair Butler, I am a United States Citizen and I am married to
     Yehuda Avitan . . . .I am making this affidavit as part of my petition for an immigrant visa

13   for him, as a way or retracting a statement which I was forced to sign in May 2008.

14       My husband and I were married in April of 2005 and shortly thereafter, I filed a visa
     petition on his behalf.  After filing, we were interviewed at the immigration offices in Salt

15   Lake City.  Although we were having problems in our marriage and we had separated, were
     were trying to work out our problems and I wanted to be able to settle the issue of his legal

16   status here to take that stress out of the equation.  I was so excited when we got the notice to
     return in 2008 that I eagerly prepared all the documentation necessary and happily went to

17   the interview. . . .

18   . . .I was called into the room alone with the officer, Mark Titus.  His first rematk to me was,
     "I know your marriage is a sham because Israelis don't marry single women with children

19   because those women are dirty." . . .He told me from the outset that I was going to sign a
     statement indicating that I entered my marriage for money and to get immigration status for

20   Udi, or he would see to it that I was going to lose my child.

21       Because his accusations were untrue, I fought back.  I told him that was not the case,
     that Udi and I married for love and with the intention of building our lives together forever.

22   Officer Titus told me that Udi was dangerous, and that I could be killed, because he has an
     uncle who is rich and powerful, and has ties to the Mafia.  That was not true, but he kept

23   badgering me and threatening to put me in jail so that I would lose my son.  I asked to leave,
     because I didn't want to be there, and I asked to go talk to my husband, but he would not let

24   me.

25       His threats finally broke me. . . .I could see that this officer was determined to ruin
     me, and I finally gave in. . . .

26

27       The statement I filed was written by him, and he made it up, and twisted my words to
     suit his purpose.  For most of the time we have been together, I have supported my husband
     financially.  He didn't have his work authorization for some time, and the only money he

28   ever was able to contribute to our household was money his brother or sister would give him.

**United States District Court**

For the Northern District of California

1    Later, he started driving trucks for his brother and we would be separated for weeks at a
2    time, which was also hard on the marriage, but he was more able to contribute to our
     household financially.

3           But I was never paid by my husband to marry him so that he could obtain his
4    immigration papers.  We both entered this marriage with the intention of sharing our lives
     together. . . .

5    *Id*. at 13-14 (6/5/2009 Affidavit).

6           On November 24, 2009, in response to a notice of interview, Avitan appeared for an

7    interview but Ms. Butler did not.  CAR at 4; Complaint ¶ 37.  Avitan claimed that Ms. Butler was ill

8    with the swine flu and asked that the interview be rescheduled, but the request was denied.  CAR at

9    4; Complaint ¶ 37.  According to USCIS, at the November 24, 2009 interview Avitan refused to

10   answer any questions about his marriage to Ms. Butler because he did not have an attorney present,

11   and no "further evidence to substantiate [Ms. Butler's] reason for not coming to the interview" was

12   submitted after the interview.  CAR at 4.

13          On January 5, 2010, USCIS denied the Third I-130 Petition.  CAR at 1.  The attached written

14   decision described Ms. Butler's earlier I-130 petitions and the reasons for their denial, citing the

15   withdrawal of the First I-130 Petition and the substantive finding in connection with the Second I-

16   130 Petition that the marriage between Avitan and Ms. Butler was entered into for the purpose of

17   evading immigration laws and obtaining immigration benefits for Avitan.  CAR at 4-5.  The decision

18   went on to state that in light of the earlier denials, Ms. Butler bore a "heavy burden" to explain the

19   circumstances of the withdrawal of the First I-130 and that she also was required to submit evidence

20   of the bona fides of her relationship with Avitan.  CAR at 4.  USCIS found that this burden was not

21   met, stating as follows:

22          In the instant case, you submitted an affidavit stating that you were forced to sign the
            statement prepared by the government official and now you are retracting your statement.
23          According to 8 Code of Federal Regulations, Part 103.2(b)(6), a withdrawal may not be
            retracted.  In addition, you and the beneficiary did not submit any additional evidence
24          refuting the prior findings of the [USCIS].  You and the beneficiary also did not provide any
            new evidence supporting the bona fides of the marriage.
25
            The record supports the finding that the beneficiary's marriage was a sham marriage entered
26          into to evade immigration laws.  You have not submitted any evidence indicating the
            contrary.
27
            The record has established that the previous visa petitions you filed on behalf of the
28          beneficiary and the sworn statements constitute sufficient substantial and probative evidence

1    to support a finding that the beneficiary is an alien who falls within the purview of Section
     204(c) of the Act [8 U.S.C. § 1154(c)].[3]  As the petitioner had entered into a marriage with
2    Yehuda Avitan for the sole purpose to obtain immigration benefits, no subsequent visa
     petition filed on his behalf may be approved.
3

4    *Id.*

5    On July 27, 2010, Plaintiff instituted this lawsuit by filing the Complaint.

6    **B.     The Complaint**

7    In the Complaint, Plaintiff asserts the following claims:

8    Claim One: Violation of Procedural Due Process under the Constitution "by failing to

9    provide Plaintiff with adequate opportunity to rebut the derogatory information contained in

10   the administrative record; and by not allowing Plaintiff to present and cross examine

11   witnesses and present evidence."  Complaint ¶ 43.  As a remedy for this alleged violation,

12   Plaintiff asks the Court to "provide him with a de novo evidentiary hearing before the

13   Immigration Judge to determine the validity of Defendant's decision to deny his I-130

14   petition."  *Id.*

15   Claim Two: Violation of Procedural Due Process under Immigration and Nationality Act for

16   the same reasons cited in support of Claim One.  Complaint ¶ 45.  Plaintiff seeks a de novo

17   evidentiary hearing on this claim as well.

18   Claim Three: Violation of Administrative Procedures Act based on allegation that denial of

19   Plaintiff's I-130 petition "is not supported by the record and is therefore arbitrary and

20   capricious."  *Id.* ¶ 47.

21   _____

22   [3]Section 1154(c) provides as follows:

23   Limitation on orphan petitions approved for a single petitioner; prohibition against approval in
     cases of marriages entered into in order to evade immigration laws; restriction on future entry
24   of aliens involved with marriage fraud[.]

25   Notwithstanding the provisions of subsection (b) of this section no petition shall be approved
     if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative
     or preference status as the spouse of a citizen of the United States or the spouse of an alien
26   lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney
     General to have been entered into for the purpose of evading the immigration laws, or (2) the
27   Attorney General has determined that the alien has attempted or conspired to enter into a
     marriage for the purpose of evading the immigration laws.
28

**United States District Court**
For the Northern District of California

6

**United States District Court**

For the Northern District of California

1    Claim Four: Injunctive Relief based on allegation that "[a] bona fide dispute has arisen

2    between Plaintiff and the Defendant regarding the factual and legal sufficiency of the

3    Defendant's decision to deny Plaintiff's I-130 petition, and Plaintiff has been prejudiced by

4    the Defendant's decision." *Id*. ¶ 50.

5    Claim Five: Declaratory Relief under 28 U.S.C. § 2201 based on same allegation as Claim

6    Four.

7    Claim Six: Declaration that 8 C.F.R. § 204.1 and 8 C.F.R. § 1204.1, as interpreted by the

8    Department of Homeland Security ("DHS"), are ultra vires, to the extent that they give DHS

9    exclusive authority to make a marriage fraud determination and adjudicate an I-130 petition

10    without allowing an alien to examine the evidence or cross-examine witnesses, in violation

11    of due process and "in direct conflict with Immigration and Nationality Act ("INA") §

12    240(b)(4), 8 U.S.C. § 1229a(b)(4) which provides due process rights to all aliens in removal

13    proceedings." Complaint ¶ 55.

14    Claim Seven (erroneously entitled "Claim Six" in Complaint): Attorneys' Fees and Costs

15    pursuant to the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412.

16    **C.    The Motions**

17    Defendants assert that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

18    Claims One, Two and Six fail to state a claim.  In particular, as to Claims One and Two, based on

19    the alleged denial of due process, Defendants assert that Plaintiff fails to state a claim because: 1) the

20    requested relief on these claims – a de novo hearing before an immigration judge – is not available

21    because immigration judges do not have jurisdiction to adjudicate visa petitions; and 2) Plaintiff is

22    not entitled to a formal adjudicatory hearing on his visa petition but rather, merely to adjudication by

23    the USCIS pursuant to its regulations, which Plaintiff received.  Defendants' Motion at 6-9.

24    Defendants further assert that Claim Six fails to state a claim because USCIS's authority over

25    marriage determinations derives from statute and therefore is not ultra vires.

26    Defendants seeks summary judgment as to Claims Three, Four and Five, based on the

27    allegation that the denial of the Third I-130 Petition was arbitrary, capricious and lacked a basis in

28    fact and law, on the ground that neither Ms. Butler nor Avitan offered evidence to substantiate their

7

**United States District Court**
For the Northern District of California

1  marriage and there is ample evidence in the record to support the finding that the marriage was a

2  sham. *Id*. at 12-17.

3  Finally, Defendants assert that in any event, Defendant Eric Holder, Attorney General of the

4  United States, should be dismissed as to all of Plaintiff's claims because he is not a proper defendant

5  under the Homeland Security Act of 2002, which abolished the Immigration and Naturalization

6  Service ("INS") and transferred the power to adjudicate I-130 petitions from the Commissioner of

7  the INS and the Attorney General to the Director of USCIS, under the purview of the Secretary of

8  Homeland Security. *Id*. at 1 n. 1 (citing Pub. Law No. 107-296, §§ 451(b) & 471).

9  In his opposition and cross-motion ("Plaintiff's Motion"), Plaintiff asserts that he is entitled

10  to summary judgment on his "complaint for declaratory and injunctive relief" on the grounds that: 1)

11  the District Director of the USCIS erred in denying the Third I-130 Petition by giving "conclusive

12  weight" to the determinations made in the prior proceedings to conclude that Avitan was subject to

13  INA § 204(c) [8 U.S.C. § 1154(c)]; 2) a "harmonious reading" of the statutory provisions governing

14  immigrant visa petitions and removal proceedings, codified at 8 U.S.C. §§ 1154(a)(1)(A)(i) and

15  1229a(b)(4), respectively, entitle Plaintiff to challenge the marriage fraud finding made on his I-130

16  petition in the removal proceedings that are underway in the immigration court, subject to the same

17  rights to present evidence and examine witnesses that govern removal proceedings; 3) the balancing

18  test for determining the administrative procedures necessary to ensure due process under the U.S.

19  Constitution, set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), also requires that an alien

20  be allowed to challenge an I-130 visa determination in removal proceedings.[4]

21  **D.    Statutory and Regulatory Framework**

22  Adjustment of status is governed by section 245 of the Immigration and Nationality Act

23  ("INA"), 8 U.S.C. § 1255.  Section 1255(a) states that:

24  [t]he status of an alien who was inspected and admitted or paroled into
the United States. . . may be adjusted by the Attorney General, in his
25  discretion and under such regulations as he may prescribe, to that of an
alien lawfully admitted for permanent residence if (1) the alien makes

26

27  [4]Plaintiff does not object to dismissal of Defendant Eric Holder, who is dismissed from the case
on the basis that he is not a proper defendant in light of the transfer of authority to make visa
28  determinations from the INS to the Director of USCIS, as discussed above.

**United States District Court**

For the Northern District of California

1    an application for such adjustment, (2) the alien is eligible to receive
2    an immigrant visa and is admissible to the United States for permanent
     residence, and (3) an immigrant visa is immediately available to him at
3    the time his application is filed.

4    8 U.S.C. § 1255(a).  Although the text of section 1255 expressly authorizes the Attorney General to

5    adjust status, that authority is now vested in the Secretary of Homeland Security by virtue of the

6    Homeland Security Act of 2002, 6 U.S.C. §§ 101 *et seq.*  6 U.S.C. § 271(b); *see also Clark v.*

7    *Martinez*, 543 U.S. 371, 375 n.5 (2005) (noting that authority formerly exercised by the Attorney

8    General and the Immigration and Naturalization Service ("INS") under similar provision of the INA

9    was transferred to the Secretary of Homeland Security and divisions of that Department, including

10   USCIS, by the Homeland Security Act).  As a result of this transfer, the authority to adjudicate

11   adjustment of status applications is now vested in the Director of USCIS.  *Id.*; 8 C.F.R. § 245.2(a)

12   (granting USCIS jurisdiction to adjudicate adjustment of status applications).  Similarly, the

13   authority to adjudicate I-130 visa petitions was transferred from the INS (and the Attorney General)

14   to the Director of USCIS.  6 U.S.C. § 271(b); 8 C.F.R. § 204.1 & 204.2.

15        The application for adjustment of status to that of lawful permanent resident is USCIS Form

16   I-485.  8 C.F.R. § 299.1.  To be eligible for adjustment of status on the basis of a family relationship

17   to a citizen or a lawful permanent resident, an applicant must have an approved immigrant visa

18   petition, the Petition for Alien Relative (Form I-130), in which the petitioner asks the USCIS to

19   confirm the family relationship.  *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 204.1(a)(1), 204.2.  *See* 8

20   U.S.C. §§ 1154(a)(1)(A)(i) and (b); 8 C.F.R. § 204.1(a).  In visa petition proceedings, such as the

21   adjudication of an I-130 by USCIS, the burden of proving eligibility for the benefit sought

22   is on the petitioner.  8 U.S.C. § 1361.

23        A marriage entered into for the purpose of circumventing immigration laws is considered

24   a fraudulent or sham marriage and is not recognized as enabling an alien spouse to obtain

25   immigration benefits.  *Vasquez v. Holder*, 602 F.3d 1003, 1014 n.11 (9th Cir. 2010) (citations

26   omitted).  In particular, 8 U.S.C. § 1154(c) provides in pertinent part:

27        [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to
          be accorded, an immediate relative or preference status as the spouse of a citizen of the
28        United States or the spouse of an alien lawfully admitted for permanent residence, by reason

**United States District Court**

For the Northern District of California

of a marriage determined by the Attorney General to have been entered into for the purpose
of evading the immigration laws, or (2) the Attorney General has determined that the alien
has attempted or conspired to enter into a marriage for the purpose of evading the
immigration laws.

8 U.S.C. § 1154(c); *see also* 8 C.F.R. § 204.2(a)(1)(ii). Thus, where there is "substantial and probative" evidence of such an attempt or conspiracy "contained in the alien's file," the petition must be denied, "regardless of whether that alien received a benefit through the attempt or conspiracy." C.F.R. § 204.2(a)(1)(ii). Further, once an alien is found to have engaged in marriage fraud, § 1154(c) forecloses the possibility of any subsequent visa petition ever being approved on behalf of the alien. *See Ghaly v. Immigration &Naturalization Serv.*, 48 F.3d 1426, 1436 (7th Cir. 1995) (acknowledging that § 1154(c) is a "harsh law" because, an alien "can never become a citizen of the United States or even reside permanently in this country" once a finding has been made that the alien entered or attempted to enter into a sham marriage). A prior admission of marriage fraud made in conjunction with a withdrawal of an earlier I-130 petition can be overcome by new evidence. *Matter of Laureano*, 19 I & N. Dec. 1, at *3-4 (1983) (affirming denial of I-130 petition after earlier petition was withdrawn and petitioner admitted that the earlier petition was based on a fraudulent marriage). However, a petitioner seeking adjustment of status under these circumstances bears a "heavy burden" to establish that a marriage is legitimate. *Id*. at * 4.

III.    **ANALYSIS**

        A.    **Legal Standard Under Rule 56**[5]

        Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment must be supported by "facts as would be admissible in evidence."

---

[5]Although Defendants requested dismissal of Claims One, Two and Six under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than under Rule 56(c), the parties stipulated at oral argument that the Court should treat Defendants' Motion as a summary judgment motion as to all of Plaintiff's claims. The Court notes that the two cases cited by Defendants in support of their request for dismissal of Claims One, Two, and Six, were, in fact, decided under the summary judgment standard. *See Garcia-Lopez v. Aytes*, 2010 WL 2991720 , at *4 (N.D. Cal. July 28, 2010); *Dhillon v.Mayorkas*, 2010 WL 3325630, at *4 (N.D. Cal. Aug. 20, 2010).

**United States District Court**
For the Northern District of California

1    Fed. R. Civ. P. 56(e).  In order to prevail, a party moving for summary judgment must show the

2    absence of a genuine issue of material fact with respect to an essential element of the non-moving

3    party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at

4    trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "*Celotex* requires that for issues

5    on which the movant would bear the burden of proof at trial, that party must show affirmatively the

6    absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on

7    which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."

8    *Fitzpatrick v. City of Atlanta*,  2 F.3d 1112, 1116 (11th Cir. 1993).  Once the movant has made this

9    showing, the burden then shifts to the party opposing summary judgment to designate "specific facts

10   showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323.  On summary judgment, the

11   court draws all reasonable factual inferences in favor of the non-movant.  *Anderson v. Liberty Lobby*

12   *Inc.,* 477 U.S. 242, 255 (1986).

13            **B.      Claims One and Two**

14            In Claims One and Two, Plaintiff alleges that his right to procedural due process under the

15   INA and the U.S. Constitution were violated because he was not given an opportunity to rebut

16   evidence in the record or to present and cross-examine witnesses in connection with the Third I-130

17   Petition.[6]  At a minimum, Plaintiff asserts, he should have been permitted to reschedule the interview

18   that was set for November 24, 2009.  As relief on these claims, Plaintiff requests a de novo hearing

19   before an immigration judge, including an opportunity to present evidence and cross-examine

20   witnesses, to determine the validity of USCIS's denial of his I-130 petition.  The Court finds that

21   these claims fail, as a matter of law, because Plaintiff has not established that the process afforded

22   him in connection with his Third I-130 Petition was insufficient under the INA or the Constitution.[7]

23

24            [6]At oral argument, Plaintiff stipulated that his due process claims were based on USCIS's denial
      of the *Third* I-130 Petition only.

25

26            [7]Defendants also seek dismissal of Claims One and Two on the grounds that the relief requested
      by Plaintiff, that is, a de novo evidentiary hearing before an immigration judge, is not available in
      connection with an I-130 petition.  Defendants are correct that immigration judges do not have the

27    authority to adjudicate I-130 petitions.  *See Freeman v. Gonzales*, 444 F.3d 1031, 1043 n. 19 (9th Cir.
      2006)(citing *Dielmann v. INS*, 34 F.3d 851, 853 (9th Cir.1994) for the proposition that "the authority

28    to adjudicate immediate relative preference petitions properly rests with the Attorney General (who has,

**United States District Court**

For the Northern District of California

1    First, Plaintiff has not pointed to any statutory provision or regulation that affords a

2  petitioner the right to a formal hearing in which evidence may be presented and witnesses cross-

3  examined.  To the contrary, the statutory provisions Congress has enacted for visa determinations do

4  not require formal adjudicatory hearings for visa petitions.  *See* 8 U.S.C. §§ 1153 and 1154;

5  *Garcia-Lopez v. Aytes*, 2010 WL 2991720 , at *4 (N.D. Cal. July 28, 2010) ("[T]here is no

6  indication that Section 1154 triggers the formal adjudication procedures set forth in the [APA].);

7  *Dhillon v.Mayorkas*, 2010 WL 3325630, at *4 (N.D. Cal. Aug. 20, 2010) (same) (citing

8  *Garcia-Lopez*, 2010 WL 2991720, at *4).  Rather, as a potential visa beneficiary, the process to

9  which Plaintiff was entitled involved the submission of an I-130 petition by petitioner and

10  subsequent adjudication of that petition by USCIS pursuant to its regulations.  *See* 8 C.F.R. § 103.2.

11  USCIS was required make its decision based only on the evidence in the record disclosed to the

12  petitioner and to provide petitioner with a basis for any denial in writing and an opportunity to

13  appeal the decision.  *See* 8 C.F.R. § 103.3(a)(1)(i).  USCIS fulfilled its duty relative to the I-130

14  petitions by considering evidence submitted by petitioner and Plaintiff, interviewing petitioner and

15  Plaintiff, issuing written decisions on the petitions based on the evidence in the record, and

16  providing the parties the opportunity to inspect the evidence in the record and/or appeal the decision.

17  *See* 8 C.F.R. §§ 103.2(b)(1), (16) and 103.3(a)(1)(i).  Thus, Plaintiff was not denied any process to

18  which he was entitled under any statute, including the INA.

19    Second, the Court concludes that Plaintiff's claims also fail to the extent they are based on

20  his Constitutional due process rights.  As a preliminary matter, it is not clear that there is any

21  constitutionally protected liberty interest at stake here.  *See Dhillon*, 2010 WL at * 4 (questioning

22

23  in turn, delegated it to the district directors), and not with the BIA or immigration judge"); *Dhillon v. Mayorkas*, 2010 WL 3325630 (N.D. Cal. Aug. 20, 2010) (Chen, J.) (acknowledging that an immigration judge "does not have the authority to review a USCIS finding regarding a fraudulent marriage").  Nor

24  is the Court persuaded by Plaintiff's assertion that the "structure of the removal proceedings" support the conclusion that a marriage fraud determination by the USCIS is reviewable in removal proceedings,

25  which is not supported by any authority.  Nonetheless, courts generally do not dismiss a claim on the basis that the remedy requested is unavailable unless *no* relief can be granted.  *See Massey v. Banning*

26  *Unified School Dist.*, 256 F.Supp.2d 1090, 1092 (C.D.Cal., 2003) (citing *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985) and *Doss v. South Central Bell Telephone Co.*, 834 F.2d

27  421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief)).  As Defendants have not established that there is no form of relief that could

28  be granted on these claims, the Court declines to dismiss Claims One and Two on this basis.

United States District Court

For the Northern District of California

1  whether plaintiffs who challenged denial of visa petition had a constitutionally protected "liberty

2  interest" given that adjustment of status is discretionary).  Assuming there is one, however,

3  Plaintiff's constitutional due process claim is an as-applied challenge that is governed by *Mathews v.*

4  *Eldgridge*, 424 U.S. 319, 335 (1976).  In *Mathews*, the Supreme Court explained that "due process is

5  flexible and calls for such procedural protections as the particular situation demands."  *Id*. at 335

6  (citations omitted).  Thus, courts are instructed to consider the following factors:

7      First, the private interest that will be affected by the official action; second, the risk of an
       erroneous deprivation of such interest through the procedures used, and the probable value, if
8      any, of additional or substitute procedural safeguards; and finally, the Government's interest,
       including the function involved and the fiscal and administrative burdens that the additional
9      or substitute procedural requirement would entail.

10 *Id*.  In this case, the Court finds that the second factor is dispositive because nothing in the

11 administrative record or in the record of this case suggests that additional procedural protections

12 would have given rise to a different result.  In particular, Plaintiff fails to point to any evidence, or

13 even offer an explanation, for the discrepancies between his own testimony and that of Ms. Butler in

14 the April 28, 2009 interview, or for his failure to bring an attorney to the interview scheduled for

15 November 24, 2009, when he might have addressed these discrepancies but instead refused to

16 answer any questions.  Nor is there any evidence in the record that the petitioner submitted any

17 evidence of her illness after she failed to appear or that she requested another opportunity to be

18 interviewed.  Further, Plaintiff has not pointed to any evidence suggesting that if the November 24,

19 2009 interview had been rescheduled, either Plaintiff or the petitioner would have offered testimony

20 that would have led to a different result.  Finally, Plaintiff has not pointed to any specific documents

21 suggesting that additional procedural safeguards would have led to a different result.

22      Accordingly, the Court concludes that Defendants are entitled to summary judgment on

23 Claims One and Two.

24

25

26

27

28

13

**United States District Court**
For the Northern District of California

C.    **Claim Six**

In Claim Six, Plaintiff seeks a declaration that two regulations relating to the adjudication of I-130 petitions – 8 C.F.R. § 204.1 and 8 C.F.R. § 1204.1[8] – are *ultra vires* to the extent DHS interprets these regulations as giving it authority to decide such petitions without conducting a formal hearing or affording an opportunity for the petitioner to present evidence and cross-examine witnesses, in conflict with the INA provision governing removal proceedings.  8 U.S.C. § 1229a(b)(4).  The Court finds that Defendants are entitled to summary judgment on this claim.

First, the authority to make marriage fraud determinations addressed in the regulations Plaintiff challenges derives from statute.  In particular, under the Homeland Security Act, Congress gave USCIS the authority to "establish the policies for performing such functions as are transferred to the Director by this section or this chapter or otherwise vested in the Director by law[.]"  6 U.S.C. §271(a)(3).  Among the functions that were transferred to the Director of USCIS was the adjudication of immigrant visa petitions, a function that was transferred from the Commissioner of the former INS.  6 U.S.C. § 271(b)(1).  This function includes the authority to make marriage fraud determinations under 8 U.S.C. § 1154(c).  Pursuant to this statute, DHS has promulgated regulations at 8 C.F.R. §§ 204.1 and 204.2 outlining USCIS procedures for making marriage fraud determinations.

Second, Plaintiff's reliance on statutory provisions governing *removal* proceedings is misplaced because removal proceedings are a separate process governed by different statutory provisions.  See *Garcia-Lopez*, 2010 WL 2991720 , at *3-4 (rejecting claim that 8 U.S.C. § 1229a permits cross-examination in visa petition process); *Dhillon*, 2010 WL 3325630, at *4 (distinguishing I-130 petition process, in which visa applicant or petitioner can review derogatory information, from removal process, which allows the actual examination of evidence and witnesses) (citing *Garcia-Lopez*, 2010 WL 2991720, at *4).  USCIS District Directors decide spousal visa

---

[8]As noted by Defendants, 8 C.F.R. § 1204.1 applies only to determinations of whether a petitioner has established eligibility for the "bona fide marriage exemption," which is only applicable to marriages that occur during the pendency of removal proceedings. 8 C.F.R. § 204.2(a)(1)(iii). Plaintiff and petitioner married on November 13, 2004, and Plaintiff was placed into removal proceedings on June 10, 2008. Section 1204.1 thus does not apply here.

**United States District Court**
For the Northern District of California

1   petitions, such as the one at issue here.  That process is governed by 8 U.S.C. § 1154(c) and 8 C.F.R.

2   §§ 204.1 and 204.2.  Removal proceedings, on the other hand, are overseen by immigration judges

3   and are governed by 8 U.S.C. § 1229a and 8 C.F.R. § 236.1.   Therefore, Plaintiff's claim fails.

4         **D.**     **Claims Three, Four and Five**

5         In Claims Three, Four and Five, Plaintiff challenges the decision of USCIS denying the I-130

6   petitions on the merits.[9]   The parties stipulated at oral argument that the applicable standard on all

7   three claims is the standard that governs Claim Three, based on Defendants' alleged violation of the

8   Administrative Procedures Act, and the Court agrees.  *See Ghafoori v. Napolitano*, 2010 WL

9   1838915, at *3 n.7 (N.D. Cal. May 4, 2010) (Henderson, J.) (applying APA standard of review to

10  claims brought under APA and Default Judgment Act, 28 U.S.C. § 2201, on the basis that relief

11  sought on both claims was the same, citing *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507

12  (9th Cir.1997)).

13        **1.**     **Legal Standard**

14        The Administrative Procedure Act ("APA") subjects to judicial review any "final agency

15  action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  Under the APA, a

16  reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions

17  found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

18  law." *Id.* § 706(2)(A).  This "standard of review is a narrow one," demanding a "searching and

19  careful" inquiry that assesses "whether the decision was based on a consideration of the relevant

20  factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park,*

21  *Inc. v. Volpe*, 401 U.S. 402, 416 (1971), overruled on other grounds by *Califano v. Sanders*, 430

22  U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[10]   "The court is not empowered to substitute its

23

24       [9]To the extent these claims also appear to be based on alleged procedural deficiencies, the claims
    are dismissed for the reasons stated above.

25

26       [10]The Court rejects Plaintiff's contention that the relevant standard is the "substantial evidence"
    standard.  As the Court explained in *Citizens to Preserve Overton Park*, the "substantial evidence"
    standard applies to review of agency action only under narrow circumstances, in particular, in cases
27  where the agency action is taken pursuant to a rulemaking provision of the Administrative Procedure
    Act itself . . . or when the agency action is based on a public adjudicatory hearing."  401 U.S. at 414.
28  As the agency decision at issue here does not fall within this narrow category of decisions, the

**United States District Court**

For the Northern District of California

1    judgment for that of the agency." *Id*.  Nor is the court required to resolve any facts where relief is

2    sought under the APA.  *Occidental Engineering Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

3    Rather, the court's task is to determine whether the evidence in the administrative record permitted

4    the agency to make the decision it did.  *Id*.  A court should uphold an agency decision even if it is

5    "'of less than ideal clarity,'" so long as "'the agency's path may reasonably be discerned.'"

6    *Northwestern Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1478 (9th Cir. 1994)

7    (citing *Motor Vehicle Mfr. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).  The

8    agency need only show "'a rational connection between the facts found and the choices made.'"

9    *Motor Vehicle Mfr. Ass'n*, 463 U.S. at 43 (citation omitted).  "[R]eview is especially deferential in

10   the context of immigration policy."  *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997).

11              **2.      Application of Legal Standard**

12           As discussed above, under 8 C.F.R. § 204.2(a)(1)(ii), the USCIS may deny an I-130 petition

13   where there is "substantial and probative evidence" of marriage fraud.  Thus, Defendants are entitled

14   to summary judgment on these claims as long as the USCIS's determination that this standard was

15   met is not arbitrary and capricious.  Having carefully reviewed the evidence in the record, the Court

16   finds that the evidence in the record was sufficient to support the agency's decision and therefore,

17   that Defendants are entitled to summary judgment on Claims Three, Four and Five.

18           First, the Court rejects Plaintiff's assertion that USCIS gave "conclusive weight" to the

19   denial of the First I-130 Petition, based on Ms. Claire's admission and withdrawal of that petition.

20   Rather, a review of the written decision issued in support of the final I-130 petition reveals that

21   USCIS did not rely solely on the first denial (although that was on reason for the denial) but instead,

22   cited other evidence supporting its decision as well, including the following:

23   •        petitioner did not appear for the final I-130 interview, purportedly because she had swine flu,
             but Plaintiff offered no medical evidence or other documentation substantiating petitioner's
24           illness;

25   •        Plaintiff could not be interviewed at the final scheduled interview because he arrived without
             counsel and refused to answer questions concerning his marriage without counsel present;
26

27   _____

28   substantial evidence standard does not apply.

**United States District Court**
For the Northern District of California

1   •       After petitioner's first two I-130 petitions were denied, petitioner did not provide any new evidence supporting the bona fides of the marriage;

2

3   •       In their April 23, 2009 interview, Plaintiff and petitioner, in the course of separate interviews, gave several inconsistent answers, as set forth above.  In addition, in that

4               interview,  Plaintiff and petitioner both testified that Plaintiff was involved in a "physical" and "emotional" relationship with a another woman and that Plaintiff and petitioner's relationship was no longer romantic.

5

6   CAR 1-5.

7         Second, the Court rejects Plaintiff's reliance on *Matter of Tawfik*, 20 I & N. Dec. 166, 170

8   (BIA 1990) in support of his assertion that USCIS gave undue weight to the denial of the First I-130

9   Petition and petitioner's admission in connection with that petition.  In *Tawfik*, the Board of

10   Immigration Appeals ("BIA") held that where a prior visa petition had been denied based, in part, on

11   evidence that a marriage was entered into to evade immigration laws but where no actual finding had

12   been made of fraudulent marriage, the prior decision was not entitled to conclusive effect.  Rather,

13   an independent decision was to be made based on a consideration of the entire record, including the

14   evidence in the record relating to the earlier denial.  *Id*.  Here, the written decision issued by the

15   USCIS in support of its denial of the Third I-130 petition shows that the USCIS did not give

16   conclusive effect to the earlier denials of petitioner's I-130 petitions but instead, made a decision

17   based on the whole record, as discussed above.

18         Third, the Court is not persuaded by Plaintiff's assertion at oral argument that the alleged

19   coercion of the petitioner's admission in connection with the First I-130 Petition taints the entire

20   process such that the denial of the Third I-130 Petition must be vacated.  Even drawing all

21   reasonable inferences in Plaintiff's favor with respect to whether the petitioner's withdrawal of the

22   earlier petition was coerced, Plaintiff has not cited any authority that suggests that where there is

23   ample evidence in the record– apart from any admission made in connection with an earlier

24   withdrawal, coerced or not  – that a marriage was fraudulent, a court may not affirm a denial of an I-

25   130 petition by the USCIS on the basis of that evidence only.   Although Plaintiff invokes the "fruit

26   of the poisonous tree" doctrine in support of his position, the Court has found no authority

27   suggesting that that doctrine is applicable in this context.

28

1    Therefore, the Court finds that USCIS' denial of petitioner's Third I-130 Petition was not

2  arbitrary and capricious and therefore, that Defendants are entitled to summary judgment motion on

3  Plaintiff's third, fourth, and fifth claims.

4  **IV.    CONCLUSION**

5    For the reasons stated above, Defendants' Motion is GRANTED and summary judgment is

6  entered as to Claims One through Six.   In addition, because Plaintiff's substantive claims fail, the

7  Court also dismisses his request for Attorneys' Fees under the EAJA (erroneously labeled "Claim

8  Six").  Plaintiff's Motion is DENIED.

9

10    IT IS SO ORDERED.

11  Dated: February 8, 2011

12

13  _____

JOSEPH C. SPERO

14  United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

18